## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FONDA JACKSON | : |
| 8031 Buist Ave. | : |
| Philadelphia, PA 19153 | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| | : CASE NO.: |
| v. | : |
| | : |
| CITY OF PHILADELPHIA | : **JURY TRIAL DEMANDED** |
| 1401 JFK Blvd. | : |
| Philadelphia, PA 19106 | : |
| and | : |
| PERRITTI DIVIRGILIO | : |
| 1401 JFK Blvd. | : |
| Philadelphia, PA 19106 | : |
| and | : |
| MONICA MARCHETTI | : |
| 1401 JFK Blvd. | : |
| Philadelphia, PA 19106 | : |
| and | : |
| JILLIAN LEIB | : |
| 1401 JFK Blvd. | : |
| Philadelphia, PA 19106 | : |
| and | : |
| MICHELLE FLAMER | : |
| 1401 JFK Blvd. | : |
| Philadelphia, PA 19106 | : |
| and | : |
| RICHARD LAZER | : |
| 1401 JFK Blvd. | : |
| Philadelphia, PA 19106 | : |
| | : |
| Defendants. | : |
| | : |

## CIVIL ACTION COMPLAINT

Plaintiff, Fonda Jackson (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

## I.  Introduction

1.       Plaintiff has initiated this action to redress violations by the City of Philadelphia, Perritti DiVirgilio, Monica Marchetti, Jillian Leib, Michelle Flamer, and Richard Lazer (hereinafter collectively referred to as "Defendants," unless indicated otherwise) of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), 42 U.S.C. § 1981, the Pennsylvania Whistleblower Law (the "PWL" - 43 P.S. §§ 1421 *et. seq.*), First-Amendment protections, the Equal Pay Act ("EPA" - 29 U.S.C. § 206 and 29 U.S.C. § 215(a)(3), the Families First Coronavirus Response Act ("FFCRA" - Pub. L. No. 116-127, 134 Stat. 178 (2020)), the Fair Labor Standards Act ("FLSA" - 29 U.S.C. § 201 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et. seq.*), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA - 43 Pa. C.S. §§ 951 *et. seq.*).[1] Plaintiff asserts herein that she was unlawfully terminated from her employment with the City of Philadelphia in violation of these laws and seeks damages as set forth more fully herein.

## II.       Jurisdiction and Venue

2.       This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310 (1945) and its progeny.

---

[1] Reference to the PHRA are made herein in this Introduction Section *for notice purposes only*. Plaintiff's administrative remedies are not fully exhausted for proceeding under such claims yet. Thus, such claims are excluded in the count-section of this Complaint. Plaintiff will move to amend the instant lawsuit to include claims under the PHRA following administrative exhaustion with the PHRC.

3.      This action is initiated pursuant to a federal law(s). The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as her federal claims herein.

4.      Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.      Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission ("EEOC") as it pertains to her Title VII claims. Plaintiff received a right-to-sue letter from the EEOC on April 9, 2021. Plaintiff thus also timely files the instant lawsuit within 90 days of receiving said right-to-sue ("RTS") letter. In all aspects, Plaintiff has properly exhausted her federal administrative remedies.

## III.    Parties

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult who resides at the above-captioned address.

8.      Defendant City of Philadelphia (hereinafter "Defendant City") is the largest city in the state of Pennsylvania. At all relevant times herein, Plaintiff worked for the Mayor's Office of Labor – Labor Standards Unit, which is charged with administering and enforcing Defendant City's worker protection laws.

9. Defendant Perritti DiVirgilio (hereinafter "Defendant DiVirgilio") was at all relevant times herein (and upon information and belief remains) the Director of Labor Standards for Defendant City's Labor Standards Unit.

10. Defendant Monica Marchetti (hereinafter "Defendant Marchetti") was at all relevant times herein (and upon information and belief remains) the Director of the Mayor's Office of Labor Relations for Defendant City.

11. Defendant Jillian Leib (hereinafter "Defendant Leib") was at all relevant times herein (and upon information and belief remains) an Administrator within the Mayor's Office of Labor Relations for Defendant City.

12. Defendant Michelle Flamer (hereinafter "Defendant Flamer") was at all relevant times herein (and upon information and belief remains) a Senior Attorney within Defendant City's Legal Department.

13. Defendant Richard Lazer (hereinafter "Defendant Lazer") was at all relevant times herein (and upon information and belief remains) the Deputy Mayor of Labor for Defendant City. [2]

14. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendants.

## IV. Factual Background

15. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[2] Defendants DiVirgilio, Marchetti, Leib, Flamer, and Lazer are hereinafter collectively referred to as "Defendant Individuals," unless indicated otherwise.

16.     Plaintiff was employed by Defendant City in different capacities for approximately four (4) years.

17.     Plaintiff was originally hired by Defendant City on or about October 11, 2016 to work within the Mayor's Office of Labor - Office of Benefits and Wage Compliance.

18.     On or about January 1, 2018, Plaintiff transferred departments and began working for Defendant City's Labor Standards Unit.

19.     While employed Defendant City's Labor Standards Unit, Plaintiff was directly supervised by Defendant DiVirgilio.

20.     Upon transferring to Defendant City's Labor Standard Unit, Plaintiff was told that she would be conducting interviews for the unit. However, shortly after transferring, Plaintiff was told by Defendant DiVirgilio that the Labor Standards Unit does not send women into the field and as a result, Plaintiff was given the position of a Compliance Associate on the Workforce Diversity Team (wherein she would only perform in-office work).

21.     During her employment with Defendant City's Labor Standards Unit as a Compliance Associate for the Workforce Diversity Team, Plaintiff was assigned with the task of overseeing compliance with Chapter 17-1600 of the Philadelphia Code.

22.     By way of background, Defendant City's Department of Labor is responsible for overseeing and enforcing various labor laws, including Chapter 17-1600 of the Philadelphia Code.

23.     Under Chapter 17-1600 of the Philadelphia Code, contractors that win bids for city funded public works and service projects (over $100,000) are required to submit a Work Diversity Plan to Defendant City's Labor Standards Unit prior to the start of the project that details the demographics of minorities (based on race and gender) working on said project.  This requirement was made to further the goals set forth under  Chapter 17-1600 of the Philadelphia Code, which was to provide meaningful and representative opportunities for minorities and women and create an appropriately diverse workface in connection with the contract or the covered project.

24.     When the aforesaid contractors submitted their Work Diversity Plans to Defendant City's Labor Standards Unit, they would be given to Defendant DiVirgilio and he would either approve the plan or reject the plan.

25.     If Defendant DiVirgilio approved the aforesaid Work Diversity Plan, Plaintiff would be required to put it on her list to review when the project reached 25% of its completion in order to determine if the contractor was on track to be in compliance with their aforesaid approved Work Diversity Plan.

26.     If a contractor was not on track with its approved Work Diversity Plan (discussed *supra*), Plaintiff would send them a best and good faith efforts verification, wherein they would be required to explain why they were not in compliance and the efforts they were making (or had made) to meet their plan.

27.     When a contractor would send back the aforementioned best and good faith efforts verification, Plaintiff would send it to Defendant DiVirgilio and he along with Defendant City's Legal Department would decide whether to implement enforcement procedures under Chapter 17-1600 of the Philadelphia Code against the contractors that were not in compliance.

**Plaintiff's Concerns of Racial and Gender Discrimination Pertaining to Enforcement of the Philadelphia Code – Chapter 17-1600.**

28.     During her employment with Defendant City's Labor Standards Unit, Plaintiff became increasingly concerned that management within the Labor Standards Unit and Defendant City's Legal Department were not properly enforcing  Chapter 17-1600 of the Philadelphia Code and therefore promoting or condoning racial and gender discrimination throughout Defendant City's workforce (in complete violation of the law).

29.     By not properly enforcing Chapter 17-1600 of the Philadelphia Code, minorities and women were not benefiting from the law the way the law had intended.

30.     As a result, Plaintiff raised concerns of racial and gender discrimination to Defendants specifically regarding the way they were enforcing (or not enforcing) Chapter 17-1600 of the Philadelphia Code.

31.     The individuals in which Plaintiff addressed these aforesaid concerns with included but were not limited to, Defendant DiVirgilio, Manny Citron (Chief of Staff for Defendant City's Department of Labor – hereinafter "Citron"), Defendant Marchetti, Defendant Flamer, and Defendant Lazer.

32.     For example,

(a) Plaintiff met with Defendant DiVirgilio, Citron, Defendant Lazer, and Defendant Flamer on several occasions throughout 2018. During these aforesaid meetings, Plaintiff expressed her concerns regarding Defendant City's failure to properly enforce or implement any policies or procedures as it pertained to monitoring or enforcing the Workforce Diversity requirements set forth by Chapter 17-1600 of the Philadelphia Code;

(b) On or about April 5, 2019, Plaintiff sent Defendant DiVirgilio an email

stating in part:

> In October 2018, there was a meeting between our department, Manny, Michelle, and Rich. The plan was to have procedures implemented by December 1, 2018.  We are approaching 3 months since that deadline and still no procedures have been implemented.  I have acquired [sic] about this several times.  You have indicated that you have reached out to Michelle and Rich, however we still have not received answers.
>
> . . .
>
> Not only as an employee of the City but also as a resident it is concerning how Workforce Diversity is being handled.  You have told me on multiple occasions that City Council only passed Workforce Diversity requirements to make their constituents happy, but they actually have no expectation that contractors will hire a diverse staff because they don't want to upset the Unions, as a minority female and City of Philadelphia resident this is highly offensive.

Plaintiff received no response to this email.

(c) On or about April 10, 2019, Plaintiff sent Defendant Flamer an email

and carbon copied Defendant DiVirgilio stating (in part) as follows:

> Labor Standards has been accepting Workforce Diversity goals submitted by the contractor in which the goals submitted are significantly below the goals established by the Disparity Study for the past two years. This practice has not yielded any significant increase in minority participation nor will it in the foreseeable future.
>
> . . .

> If there is truly a desire for contractors to diversity [sic] their workforce, Labor Standards must implement procedures to enforce Workforce Diversity goals including imposing fines and penalties for those contractors who fail to demonstrate their Best and Good Faith Efforts.

Plaintiff never received a response from Defendant Flamer or Defendant DiVirgilio to her April 10, 2019 email.

33.     By way of further example, on or about November 1, 2019, Plaintiff had a meeting with Citron and Defendant DiVirgilio. During this meeting, Plaintiff reported that (1) she did not believe Chapter 17-1600 of the Philadelphia Code was being enforced properly; (2) it had not been properly enforced since 2016; and (3) as a result, Defendant City was being complicit with and/or was promoting race and gender discrimination within Defendant City.

34.     Plaintiff further expressed to Citron during the November 1, 2019 meeting that she had reported these same concerns to Defendant DiVirgilio on several occasions in the past, but that he took the position that Defendant City's Council passed the aforesaid code but did not really want it enforced.

35.     Plaintiff's aforesaid concerns (discussed in Paragraphs 30-34 of the instant Civil Action Complaint) were viewed as disparaging to Defendant City and in retaliation for expressing her good faith reasonable beliefs of wrongdoing and discrimination, Plaintiff was issued written discipline for "insubordination" on November 13, 2019 (less than two weeks after her meeting with Citron and Defendant DiVirgilio – discussed *supra*).

36.     On or about November 13, 2019, Plaintiff met with Defendant DiVirgilio, Defendant Marchetti, and Defendant Leib to discuss her aforesaid write up for insubordination. When Plaintiff asked for specifics as to what she did that would be considered "insubordinate," Defendant Marchetti responded that Citron did not like her "tone" during the November 1, 2019 meeting.

37.     In response, Plaintiff informed Defendant Marchetti that she was, in good faith, reporting wrongdoing within Defendant City (specifically within its Labor Standards Unit and its Legal Department) during her meeting with Citron on November 1, 2019.  Defendant Marchetti responded by questioning Plaintiff's "right" to report these concerns to Defendant DiVirgilio and Citron, at which point in time Plaintiff responded that she believed she had a right and an obligation to report what she believed to be wrongdoing and discrimination.

38.     During her November 13, 2019 meeting with Defendants DeVirgilio, Marchetti, and Leib, Plaintiff again expressed the same concerns pertaining to Defendant City's failure to enforce Chapter 17-1600 of the Philadelphia Code and Defendant City's promotion of/compliance with race and gender discrimination within Defendant City's workforce.

39.     Throughout her meeting with Defendant City's management on November 13, 2019, Plaintiff felt bullied, intimidated and threatened and believes that this was done intentionally to try and prevent her from making similar reports of wrongdoing/discrimination in the future.

40.     As a result of the retaliatory treatment she was receiving in response to her protected activity under state and federal law (discussed *supra*), Plaintiff submitted a rebuttal to her November 13, 2019 write up to Defendant Leib, Defendant DiVirgilio, Defendant Marchetti, and Citron – which detailed her expressed concerns of wrongdoing, racial and gender discrimination, violations of the Equal Pay Act (discussed further *infra*), and retaliation for having engaged in protected activity.

41.     In addition to her rebuttal (discussed in Paragraph 40 of the instant Civil Action Complaint), Plaintiff also filed a complaint in or about December of 2019 with Defendant City's Office of the Inspector General.

42.     As part of her complaint to Defendant City's Office of the Inspector General, Plaintiff forwarded her rebuttal to the aforesaid November 13, 2019 write up and informed two investigators during her interview with the Office of the Inspector General that she believed she was being retaliated against for having expressed concerns of wrongdoing, racial/gender discrimination, and/or violations of the Equal Pay Act.

43.     Unfortunately, Plaintiff's aforesaid complaint to Defendant City's Office of the Inspector General was not taken seriously and they refused to investigate any further following Plaintiff's interview in or about December of 2019.

44.     Following her complaint of retaliation to the Office of the Inspector General, Plaintiff continued to raise concerns of race/gender discrimination and wrongdoing to Defendant DiVirgilio and Defendant Flamer (verbally and in writing) regarding the way Defendant City was enforcing (or not enforcing) Chapter 17-1600 of the Philadelphia Code. As part of these discussions, Plaintiff consistently asked for Defendant City's management and Legal Department to implement new policies and procedures so that Defendant City's Labor Standards Unit could properly achieve the workforce diversity goals intended under Chapter 17-1600 of the Philadelphia Code.

45.     Upon information and belief, Defendant Lazer was apprised of Plaintiff's aforesaid concerns of race/gender discrimination and wrongdoing, as well as her requests for Defendant City's management and Legal Department to implement new policies and procedures regarding the enforcement of Chapter 17-1600 of the Philadelphia Code.

46.     For example, on or about February 18, 2020, Plaintiff sent an email to Defendant DiVirgilio stating as follows:

> During our last meeting in November 2019, with Rich Lazer and James Engler, it was discussed that Manny Citron would be the lead on working with Legal (Michelle Flamer and Lou Rosman) to develop a comprehensive monitoring and enforcement procedure. It was also mentioned that there would be follow-up meetings to address how Labor Standards would be administering Philadelphia Code, Chapter 17-1600. As of today, I have not been contacted nor have I received any further instruction. Please advise if there is a comprehensive monitoring and enforcement procedure and how you would like me to respond to the compliance letter referenced above. The issue with minority and female participation on City-funded projects will not improve, if it is not being aggressively addressed and Labor Standards is not enforcing the law.

47.     Like her prior emails, Plaintiff never received a response to her aforesaid February 18, 2020 email and therefore followed up again on September 15, 2020 stating as follows (and attaching her February 18, 2020 email):

> Perry,
>
> Please see the below email that I sent to you on February 18,
> 2020 advising that I received responses to compliance letters
> and requesting direction on how to proceed. I did not receive
> a response from you.

48.     On or about October 22, 2020, Plaintiff sent an email to Defendant Flamer stating:

> As far as I am aware, there is no established enforcement
> for non-compliance that has been implemented despite
> what is outlined Philadelphia Code Chapter 17-1600. This
> is why I keep stressing that it is imperative for Labor
> Standards to have established policies, procedures and/or
> protocols on how to monitor and enforce Workforce
> Diversity compliance.

49.     Plaintiff's concerns continued to be dismissed and she continued to receive hostile back lash as a result of her reporting concerns of wrongdoing, race discrimination, and gender discrimination, including but not limited to (1) treating her in a rude and condescending manner; (2) ignoring her emails; (3) nitpicking her performance; (4) questioning her decisions; (5) telling her that she reads too much; and (6) ultimately terminating her employment (discuss further *infra*).

**Plaintiff's Concerns Regarding Equal Pay**

50.     In or about March of 2019, Plaintiff was offered a promotion to the role of Supervisor, wherein part of her job responsibilities would be to track compliance with Defendant City's Workforce Diversity Rebuild program.

51.     However, Plaintiff learned shortly after being offered the aforesaid promotion that she would be paid less than a male employee who was performing a similar role to the one she was offered – except that he had less of a workload than Plaintiff was expected to have in her new supervisor position.

52.     Upon learning this information, Plaintiff questioned Defendant DiVirgilio and Citron during a meeting in April of 2019 why she would be paid less than a male employee who was promoted into a similar role (but with less of a workload) and that she believed such a pay discrepancy was a violation of the Equal Pay Act.

53.     Plaintiff eventually rejected the promotion because of her aforesaid concerns regarding unequal pay.

54.     Later, in the written disciplinary action stemming from her November 1, 2019 meeting with Defendant DiVirgilio and Citron (dated November 13, 2019 – discussed *supra*), Defendant DiVirgilio reprimanded Plaintiff stating "this is not the first incident where you questioned the direction of the office or acted inappropriately during a meeting."

55.     During the November 13, 2019 meeting with Defendant DiVirgilio, Defendant Marchetti, and Defendant Leib, Plaintiff asked Defendant DiVirgilio to provide an example where she was allegedly "inappropriate" or "questioned the direction of the office" (as stated in the November 13, 2019 write up). Defendant DiVirgilio responded by stating that she was "unprofessional during a meeting with Manny regarding [her] role with Rebuild" and that she "kept asking Manny questions."

56.     Plaintiff replied to Defendant DiVirgilio's aforesaid accusations (discussed in Paragraphs 54 and 55 of the instant Civil Action Complaint) by informing Defendant Marchetti and Defendant Leib that she was not unprofessional during this meeting and had simply asked Citron why she would be paid differently than a male employee performing a similar role and expressed her concern that Defendant City, Defendant DiVirgilio, and Citron were violating the Equal Pay Act.

57. Plaintiff also documented these concerns in a written rebuttal to her November 13, 2019 disciplinary write up, which was submitted to Defendant Leib, Defendant DiVirgilio, Defendant Marchetti, Citron, and Defendant City's Office of the Inspector General.

58. Not surprisingly, Plaintiff's concerns regarding Defendant City's violation of the Equal Pay Act was never properly investigated or addressed by Citron, Defendant DiVirgilio, Defendant Marchetti, Defendant Leib, or anyone else in Defendant's management or Legal Department.

59. Instead, Plaintiff was subjected to a retaliatory hostile work environment (discussed *supra*), which eventually reached its peak when she was terminated from her employment on or about October 30, 2020 (for reasons discussed *infra*).

60. In addition to the forgoing, upon information and belief, a male co-worker who was performing in a similar role to Plaintiff's and who was being paid the same salary as her was given an $8,000.00 raise in the third quarter of 2020. Plaintiff was not given a similar raise despite the fact that she had more experience, was more qualified, and her position required more responsibilities.

### Plaintiff's Need For Leave Under The FFCRA

61. In or about March of 2020, Defendant City ordered that all non-essential personnel work from home as a result of the COVID-19 pandemic.

62. Plaintiff was deemed non-essential personnel and therefore began working from home on or about March 16, 2020.

63. Plaintiff has two school-age children.

64.     Shortly after being ordered to work from home, the schools in which Plaintiff's children attended were closed as a result of the COVID-19 pandemic. Therefore, Plaintiff was required to care for her children during this time.

65.     Plaintiff did not request any leave to care for her children between March of 2020 and the beginning of October, 2020 because she was able to work remotely while caring for her children.

66.     However, in or about mid-October of 2020, while Plaintiff was still working remotely, she was contacted by Defendant DiVirgilio and informed that she needed to physically report to the Commissioner's office, as they needed help counting votes.

67.     Plaintiff responded to Defendant DiVirgilio's aforesaid request to report to the Commissioner's office for work by informing him that she was unable to report to the office because she did not have childcare for her children due to COVID-19 related reasons – and therefore put Defendant DiVirgilio on notice of her need for leave under the FFCRA.

68.     At this point in time, Plaintiff's daughter's school was still closed due to COVID-19 precautions and her son's school did not have enough room to accommodate full classes in light of COVID-19 restrictions, so her son was also still attending school remotely.

69.     Rather than notify Plaintiff of her right to take protected paid leave under the FFCRA or provide her with the proper paperwork to apply for the same, Defendant DiVirgilio called Plaintiff back later in the day and told her that he found coverage for her for two days but that she would have to report to the office the next week.

70.     In response to Defendant DiVirgilio's insistence that she physically report to work, Plaintiff again informed Defendant DiVirgilio that she would not be able to physically report to the office due her aforesaid child care issues related to COVID-19.

71.     Despite Plaintiff's aforesaid second notice that she could not physically report to work due to lack of child care related to the COVID-19 pandemic, Defendant DiVirgilio again failed to inform her of her rights under the FFCRA or provide her with paperwork to request the same.

72.     Instead, Defendant DiVirgilio subjected Plaintiff to retaliatory treatment, including but not limited to expressing frustration that she could not physically report to work, ignoring her, and telling other employees that he was extremely angry with Plaintiff for not reporting to the Commissioner's office to help count votes.

73.     Upon information and belief, there was a male employee who was instructed by Defendant DiVirgilio to report to the Commissions office as well to help count votes and he did not report; however, he was not reprimanded or treated any differently by Defendant DiVirgilio as a result.

74.     The aforesaid retaliatory treatment culminated in Plaintiff's termination from employment on October 30, 2020 – approximately two weeks after she put Defendant DiVirgilio on notice that she would need to take protected paid leave under the FFCRA (for the period of time she was being required to physically report to work) to care for her children for the reasons stated above.

**Plaintiff's Wrongful Termination**

75.     On October 30, 2020, Plaintiff was abruptly terminated during a Microsoft Team Call conference.

76.     Present during this conference was Defendant Marchetti, Defendant Leib, and Valarie Hosendorf (Deputy Director of Defendant's Office of Human Resources).

77.     Plaintiff was told by Defendant Marchetti that the reason for her termination was "performance deficiencies, insubordination, and refusal of assignments."

78.     During this meeting, the following was discussed:

a)     Defendant Marchetti informed Plaintiff it was her understanding that a few weeks ago, Plaintiff was asked to go to one of the election sites and she refused to do so. Defendant Marchetti admitted in this conference that she was aware Plaintiff had declined to physically report to work due to "child care issues" (related to COVID-19); however, this was still used as a reason to terminate Plaintiff from her employment (in violation of the FFCRA).

b)     When Plaintiff asked for clarification of the performance issues she was being terminated for, Defendant Marchetti reported it was her understanding that there had been a continuing disagreement about the way the law is written and the Legal Department's opinion of the law. Defendant Marchetti also alleged that Plaintiff's tone in her emails to supervisors was a contributing factor.

79.     On or about October 30, 2020, Plaintiff was provided with a termination letter from Defendant Lazer, stating:

> The City expects its employees to maintain a positive and respectful working relationship with co-workers and supervisors. You previously received a written warning in November 2019 for your disrespectful behavior in a meeting with supervisors, and your repeated disagreement with colleagues from Law Department regarding the Law Department's interpretation of the Philadelphia Code.
>
> You have demonstrated a continued disrespectful tone in recent emails and personal interactions with your supervisors. Additionally, you have continued to improperly question the

> Law Department's interpretation of the workforce diversity
> ordinance. Accordingly, the Mayor's Office of Labor is
> terminating your employment.

80.     Plaintiff believes and therefore avers that she was specifically terminated because she had engaged in protected activity under various state and federal laws – outlined *infra*.

**Count I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Retaliation)**
**- Against Defendant City Only -**

81.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

82.     Plaintiff was extremely concerned by Defendant City's promotion of or acquiescence to racial and gender discrimination within Defendant City – specifically as it pertains to their enforcement (or lack thereof) of Philadelphia Code Chapter 17-1600 – discussed *supra*.

83.     Plaintiff expressed her concerns of the aforesaid racial and gender discrimination to Defendant City's management throughout her employment with Defendant City; however, her complaints were never properly investigated or resolved. Instead, she was subjected to a hostile work environment, issued pretextual discipline, and treated in a disparate manner (as it pertains to enforcement of policies and wages).

84.     In addition to expressing concerns of race and gender discrimination as it pertains to Defendant City's enforcement of Philadelphia Code Chapter 17-1600, Plaintiff also expressed concerns of unequal pay based on gender.

85.      Plaintiff learned shortly after being offered a promotion that she would be paid less than a male employee who was performing a similar role to what she was offered (except her position would have had a heavier work load).

86. Upon learning this information, Plaintiff questioned Defendant DiVirgilio and Citron why she would be paid less than a male employee who was promoted into a similar role (however with less of a workload) and that she believed such a pay discrepancy was a violation of the Equal Pay Act.

87. Plaintiff escalated her concerns to Defendant City's Employee Relations Department and Defendant City's Office of Inspector General; however, her concerns were never properly investigated and instead she was subjected to retaliation and eventually terminated from her employment with Defendant City.

88. Plaintiff believes and therefore avers that she was issued discipline and ultimately terminated from her employment for complaining of racial and gender discrimination.

89. These actions as aforesaid constitute violations of Title VII.

**Count II**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Gender Discrimination)**
**- Against Defendant City Only -**

90. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

91. Plaintiff was subjected to discriminatory treatment based on her gender while employment with Defendant, including but not limited to (1) not being given the same opportunity as male employees; (2) being reprimanded for things that male employees would do but not be reprimanded for; (3) being subjected to discriminatory comments based on her gender; and (4) not being offered the same wages as male employees in similar roles.

92. Based on the foregoing, Plaintiff believes and therefore avers that her gender was a motivating factor in the decision to terminate her employment.

93. These actions as aforesaid constitute violations of Title VII.

**Count III**
**Violations of 42 U.S.C. § 1981**
**(Retaliation)**
**- Against All Defendants -**

94.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

95.     Plaintiff was extremely concerned by Defendants' promotion of or acquiescence to racial discrimination within Defendant City – specifically as it pertains to their enforcement (or lack thereof) of Philadelphia Code Chapter 17-1600 – discussed *supra*.

96.     Plaintiff expressed her concerns of the aforesaid racial discrimination to Defendants throughout her employment with Defendant City; however, her complaints were never properly investigated or resolved. Instead, she was subjected to a hostile work environment, issued pretextual discipline, and treated in a disparate manner (as it pertains to enforcement of policies and wages).

97.     Plaintiff believes and therefore avers that she was issued discipline, not given a pay raise in the third quarter of 2020 (like her counterpart) and ultimately terminated from her employment for complaining of racial discrimination.

98.     These actions as aforesaid constitute violations of § 1981.

99.     Defendant Individuals are personally liable for such actions as they directly engaged in the retaliatory acts as set forth in this Complaint.[3]

---

[3] To the extent this Court addresses or determines that part or all of Plaintiff's Claims in this Count of her Complaint must be pursued through 42 U.S.C. § 1983, Plaintiff brings such claims under § 1983. However, Plaintiff is pursuing claims against the individuals herein in their individual capacity.

**Count IV**
**The Pennsylvania Whistleblower Law (the "PWL" - 43 P.S. §§ 1421 *et. seq.*)**
**(Retaliation)**
**- Against All Defendants -**

100.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

101.    Plaintiff made several "good faith report[s]" of "wrongdoing or waste" as defined under the Pennsylvania Whistleblower Act (hereinafter "the Act") to her "employer" or a "public body." *See* 43 P.S. § 1442.

102.    Such actions included but were not limited to reports and complaints of Defendants' deliberate failure to enforce Chapter 17-1600 of the Philadelphia Code, thereby promoting, condoning, and/or acquiescing to  racial and gender discrimination throughout the Defendant City's workforce (in complete contradiction to the purpose of the Chapter 17-1600 of the Philadelphia Code and in violation of the law).

103.    Plaintiff believes and therefore avers that she was subjected to a hostile work environment and ultimately terminated from her employment with Defendant City for making "good faith reports" to her employer of "wrongdoing or waste" under the Act in violation of 43 P.S. § 1423.

104.    Plaintiff timely brings this "Civil Action" within "180 days" after the adverse actions taken against her pursuant to 43 P.S. § 1424.

**Count V**
**First Amendment Retaliation (by and through 42 U.S.C. § 1983)**
**- Against Defendant Individuals Only -**

105.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

106.    Plaintiff engaged in protected activities under the First Amendment by:

(1) Expressing concerns/complaints of Defendants' refusal to properly enforce Chapter 17-1600 of the Philadelphia Code;

(2) Expressing concerns/complaints of racial and gender discrimination, specifically pertaining to Defendants' refusal to properly enforce Chapter 17-1600 of the Philadelphia Code;

(3) Expressing concerns/complaints of unequal pay based on gender; and

(4) Expressing concerns/complaints of retaliation for engaging in protected activity under the law.

107.    Complaints about serious violations of laws and – in particular – concerns of "racial discrimination plainly fall within the ambit of speech about matters of public concern," as "the Supreme Court clearly established that racial discrimination is inherently a matter of public concern." *Larry v. Powerski*, 148 F. Supp. 3d 584, 600 (E.D. Mich. 2015), citing, *Connick v. Myers*, 461 U.S. 138 (1983).

108.    Plaintiff's complaints were made as a concerned "citizen" of Defendants' blatant legal violations and their promotion and/or acquiescence to racial and gender discrimination within Defendant City, which could have been easily rectified by Defendants.[4]

---

[4] In *Larry v. Powerski,* 148 F. Supp. 3d 584, 600 (E.D. Mich. 2015), the Court rejected assertions that an "employee" somehow sheds First Amendment Protections when making a concern of racial concerns known to his or her employer, citing the Supreme Court in *Lane v. Franks*, 189 L.Ed.2d 312 (2014), and explaining:

[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Ibid.* It would be unusual (and contrary to the very core of the First Amendment) to conclude, as the defendant urges, that a public employee surrenders her First Amendment protections any time she complains of unlawful activity, no matter how invidious, merely because an employer has a workplace policy that encourages or requires employees to report such conduct.

*See also Rode v. Dellarciprete*, 845 F.2d 1195, 1201 (3d Cir. 1988)(reversing district court and holding complaints by employee about racial concerns or racial employment practices were entitled to First Amendment protection); *Walker v. City of New York*, 2002 WL 31051534, at *6 (E.D.N.Y. 2002)(holding that claims of disparate treatment complaints based on race constitute protected activity as to a First Amendment Retaliation claim); *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 679 (6th Cir. 2001)(Professor's use of word "nigger" in classroom based upon context was entitled to First Amendment protection despite a student complaint).

109.    Plaintiff was terminated expressly for First-Amendment protected activities by Defendants.

**Count VI**
**Violation of 29 U.S.C. § 206 and 29 U.S.C. § 215(a)(3) [the Equal Pay Act - "EPA]**
**(Discrimination & Retaliation)**
**- Against Defendant City Only -**

110.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

111.    Plaintiff was disciplined and terminated by Defendants for engaging in protected activities by complaining of gender discrimination as it relates to wages for a promotion that she offered.

112.    Plaintiff learned shortly after being offered a promotion that she would be paid less than a male employee who was performing a similar role to what she was offered (except her position would have had a heavier work load).

113.    Upon learning this information, Plaintiff questioned Defendant DiVirgilio and Citron why she would be paid less than a male employee who was promoted into a similar role (however, with less of a workload) and that she believed such a pay discrepancy was a violation of the Equal Pay Act.

114.    Plaintiff escalated her concerns to Defendant City's Employee Relations Department and Defendant City's Office of Inspector General; however, her concerns were never properly investigated and instead she was subjected to retaliation and eventually terminated from her employment with Defendant City.

115.    In addition to being retaliated against and terminated for having expressed concerns of unequal pay as it pertains to the promotion that Plaintiff was offered in March of 2019, Plaintiff also learned that in the third quarter of 2020 a male employee performing a

24

similar role to hers and who was initially earning the same salary as her was given an $8,000.00 raise. Plaintiff did not receive a similar raise, even though she had more qualifications, experience, and responsibilities.

116.    Plaintiff therefore believes and avers that a male employee performing in a similar role to the job she was performing for Defendant City was paid more than her because he is a male.

117.    These actions as foresaid constitute violations of 29 U.S.C. § 206 and 29 U.S.C. § 215(a)(3).

**Count VII**
**Violations of the Families First Coronavirus Response Act ("FFCRA")**
**& the Fair Labor Standards Act ("FLSA")**
**([1] Wrongful Termination & [2] Retaliation)**
**-Against Defendants City, DiVirgilio, Marchetti, Leib, and Lazer-**

118.    The foregoing paragraphs are incorporated herein as if set forth in full.

119.    Effective April 1, 2020, and until December 31, 2020, the FFCRA provides for up to 80 hours of paid sick time to eligible full-time employees who are unable to work or telework due to the effects of COVID-19 through the Emergency Paid Sick Leave Act.  *See* FFCRA, at §§ 5102(a) and (b)(A).

120.    The FFCRA has expressly identified that enforcement of and all penalties arising from violations of the Emergency Paid Sick Leave Act shall be governed by relevant sections of the FLSA, as set forth in more detail below.

121.    Plaintiff was an eligible employee as defined by Section 3(e) of the FLSA (29 U.S.C. § 203(e)), as she placed Defendant DiVirgilio on notice of her need for leave to care for her children, whose schools were closed (discussed *supra*) as a result of the COVID-19 pandemic. *See* the FFCRA, § 5102(a)(5).

122.    The named Defendants under this Count knew that Plaintiff was an eligible employee within the meaning of the FLSA and the FFCRA and Plaintiff should have been granted 80 hours of paid and protected leave under the FFCRA pursuant to the Emergency Paid Sick Leave Act.

123.    Plaintiff was terminated from her employment with Defendant City shortly after putting the named Defendants under this Count on notice of her need for leave under the FFCRA – which came as a result of being told by Defendant DiVirgilio that she had to physically report to the Commissioner office to count votes, but being unable to do so because of child care issues related to COVID-19.

124.    It is unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee" who exercises his/her rights to "take leave in accordance with this Act." *Id.* at § 5104. "An employer who willfully violates section 5104 shall . . . be considered to be in violation of section 15(a)(3) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 215(a)(3))." *Id.* at § 5105(b)(1).

125.    Additionally, an employer who in any way disciplines, discriminates or retaliates against, and/or discharges an employee in violation of this Act is subject to the penalties described in sections 16 and 17 of the FLSA (29 U.S.C. § 216, 217) with respect to such violation. *Id.* at § 5105(b)(2). Penalties under sections 16 and 17 of the FLSA include, but are not limited to, lost wages, an equivalent amount of liquidated damages, and attorney's fees and costs. *See* FLSA, 29 U.S.C. § 216; 217.

126.    Upon information and belief Defendants DiVirgilio, Marchetti, Leib, and Lazer were all aware of Plaintiff need for leave under the FFCRA and participated in the retaliatory decisions.

127.    It is believed and averred (based on the foregoing) that the named Defendants under this Count willfully terminated Plaintiff's employment in violation of the FFCRA and the FLSA.

**Count VIII**<br>
**Violations of the Families First Coronavirus Response Act ("FFCRA")**<br>
**& the Family and Medical Leave Act ("FMLA")**<br>
**([1] Retaliation & [2] Interference)**<br>
**-Against Defendants City, DiVirgilio, Marchetti, Leib, and Lazer-**

128.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

129.    Effective April 1, 2020 and through December 31, 2020 the FFCRA provides for paid leave through the Emergency Family and Medical Leave Expansion Act to eligible employees who are "unable to work (or telework) due to a need for leave to care for the son or daughter under 18 years of age of such employee if the school or place of care has been closed, or the child care provider of such son or daughter is unavailable, due to a public health emergency" (such as the COVID-19 pandemic).  *See* FFCRA, § 3102(b).

130.    The FFCRA has expressly identified that enforcement of and all penalties arising from violations of the Emergency Family and Medical Leave Expansion Act shall be governed by amendments to relevant sections of the FMLA, as set forth below.

131.    Plaintiff was an eligible employee under the amended definitional terms of the FMLA, as one "who has been employed for at least 30 calendar days by the employer with respect to whom leave is requested under [29 U.S.C.A. § 2612 (a)(1)(F)]."  *Id.* at § 3102(b).

132.    Plaintiff had been employed with Defendant City for at least 30 calendar days. *Id.*

133.    Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A. § 2612 (a)(1)(F) for a total of twelve (12) work weeks of leave on a block or intermittent basis.  *Id.* at § 3102(a)(1).

134.     After utilizing 10 days of leave under the Emergency Paid Sick Leave Act, Plaintiff would be entitled to paid leave for the remainder of the allotted 12 weeks under the Emergency Family and Medical Leave Expansion Act.

135.     Plaintiff's leave for her children (who were all under the age of 18) whose schools were closed (discussed *supra*) as a result of the COVID-19 pandemic constituted FFCRA/FMLA-qualifying leave.

136.     The names Defendants under this Count committed interference and retaliation violations of the FFCRA/FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FFCRA/FMLA rights; (2) considering Plaintiff's FFCRA/FMLA leave needs in making the decision to terminate her; (3) failing to provide Plaintiff with proper notice of her rights under the FFCRA; (4) failing to provide Plaintiff with the necessary paperwork so that she could apply for leave under the FFCRA/FMLA after she had proper notice of her need for the same; and (5) making negative comments and/or taking actions towards Plaintiff that would dissuade a reasonable person from exercising her rights under the FFCRA/FMLA.

137.     Upon information and belief Defendants DiVirgilio, Marchetti, Leib, and Lazer were all aware of Plaintiff need for leave under the FFCRA/FMLA and participated in the retaliation and interference violations asserted herein.

138.     These actions as aforesaid constitute violations of the FFCRA and the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

A.     Defendant City is to be prohibited from continuing to maintain its illegal policy, practice, or custom of retaliating against employees and is to be ordered to promulgate an effective policy against such discrimination/retaliation and to adhere thereto (awarding Plaintiff such injunctive and/or equitable relief);

B.      Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, bonuses and medical and other benefits.  Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination or retaliation at the hands of Defendants until the date of verdict (in addition to front pay or other equitable relief);

C.      Plaintiff is to be awarded reinstatement with Defendant City, unless a court determines such a remedy is impractical or impossible; and alternatively, any other damages in lieu of such relief.

D.      Plaintiff is to be awarded punitive damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish the individually-named Defendants in this action for their willful, deliberate, malicious and outrageous conduct, and to deter others from engaging in such misconduct in the future;

E.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to emotional distress/pain and suffering damages - where permitted under applicable law(s)).

F.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

G.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

H.     Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable

law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with

Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

_____
Ari R. Karpf, Esquire
3331 Street Road
Building 2, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: April 13, 2021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## <u>CASE MANAGEMENT TRACK DESIGNATION FORM</u>

|  |  |  |
|---|---|---|
| Fonda Jackson | : | CIVIL ACTION |
| v. | : | |
| City of Philadelphia, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                             ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                        ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X )

|  |  |  |
|---|---|---|
| 4/13/2021 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___8031 Buist Avenue, Philadelphia, PA 19153_____

Address of Defendant: ___1401 JFK Blvd., Philadelphia, PA 19106_____

Place of Accident, Incident or Transaction: ___Defendants place of business_____

---

***RELATED CASE, IF ANY:***

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [X]

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __4/13/2021_____     _____     ARK2484 / 91538_____
                                    *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** **Federal Question Cases:**

- [ ] 1. Indemnity Contract, Marine Contract, and All Other Contracts
- [ ] 2. FELA
- [ ] 3. Jones Act-Personal Injury
- [ ] 4. Antitrust
- [ ] 5. Patent
- [ ] 6. Labor-Management Relations
- [X] 7. Civil Rights
- [ ] 8. Habeas Corpus
- [ ] 9. Securities Act(s) Cases
- [ ] 10. Social Security Review Cases
- [ ] 11. All other Federal Question Cases
      *(Please specify):* _____

**B.** **Diversity Jurisdiction Cases:**

- [ ] 1. Insurance Contract and Other Contracts
- [ ] 2. Airplane Personal Injury
- [ ] 3. Assault, Defamation
- [ ] 4. Marine Personal Injury
- [ ] 5. Motor Vehicle Personal Injury
- [ ] 6. Other Personal Injury *(Please specify):* _____
- [ ] 7. Products Liability
- [ ] 8. Products Liability – Asbestos
- [ ] 9. All other Diversity Cases
      *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Ari R. Karpf_____, counsel of record *or* pro se plaintiff, do hereby certify:

- [X] Pursuant to Local Civil Rule 53.2, § 3(c ) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- [ ] Relief other than monetary damages is sought.

DATE: __4/13/2021_____     _____     ARK2484 / 91538_____
                            *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| JACKSON, FONDA | CITY OF PHILADELPHIA, ET AL. |

**(b)**  County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

|  |  |
|---|---|
| ☐ 1  U.S. Government<br>Plaintiff | X 3  Federal Question<br>*(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government<br>Defendant | ☐ 4  Diversity<br>*(Indicate Citizenship of Parties in Item III)* |

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>& Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>Student Loans<br>(Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>Liability<br>☐ 320 Assault, Libel &<br>Slander<br>☐ 330 Federal Employers'<br>Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>Product Liability<br>☐ 360 Other Personal<br>Injury<br>☐ 362 Personal Injury -<br>Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>Product Liability<br>☐ 367 Health Care/<br>Pharmaceutical<br>Personal Injury<br>Product Liability<br>☐ 368 Asbestos Personal<br>Injury Product<br>Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>Property Damage<br>☐ 385 Property Damage<br>Product Liability | ☐ 625 Drug Related Seizure<br>of Property 21 USC 881<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards<br>Act<br>☐ 720 Labor/Management<br>Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>Income Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated<br>New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br>3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>Accommodations<br>☐ 445 Amer. w/Disabilities -<br>Employment<br>☐ 446 Amer. w/Disabilities -<br>Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>Conditions of<br>Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>Actions | ☐ 870 Taxes (U.S. Plaintiff<br>or Defendant)<br>☐ 871 IRS—Third Party<br>26 USC 7609 | ☐ 899 Administrative Procedure<br>Act/Review or Appeal of<br>Agency Decision<br>☐ 950 Constitutionality of<br>State Statutes |

## V.  ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| X 1  Original<br>Proceeding | ☐ 2  Removed from<br>State Court | ☐ 3  Remanded from<br>Appellate Court | ☐ 4  Reinstated or<br>Reopened | ☐ 5  Transferred from<br>Another District<br>*(specify)* | ☐ 6  Multidistrict<br>Litigation -<br>Transfer | ☐ 8  Multidistrict<br>Litigation -<br>Direct File |

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); Section 1981 (42USC1981); EPA (29USC206); FFCRA (Pub.L.No. 116-127, 134 Stat. 178 (2020); FLSA (29USC2601)

Brief description of cause:
Violations of Title VII, Section 1981, PA Whistleblower Law, First Amendment Protections, EPA, FFCRA, FLSA, FMLA and the PA Human Relations Act.

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   X Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   4/13/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Print       Save As...       Reset